CLIFFORD W. SMITH

v.

BEDELL BROTHERS, a corporation.

[Decided November 6th, 1914.]

Upon a bill for an account with respect to the profits of the defendant corporation, evidence *Held* to sustain the master's report upon exceptions thereto, save as to certain specified particulars.

*Messrs. Coull & Smith,* for the exceptants.

*Mr. Jacob L. Newman,* for the defendant.

STEVENS, V. C.

This case comes up on exceptions to the master's report; the bill being for an account.

The complainant was manager of the Newark store. He was to receive a salary of $2,860 per annum, and in addition ten per cent. of the net profits. By the agreement made with complainant in 1906, when the company began business, it was agreed that Alfred and Walter Bedell, the owners of the company's stock, were each to receive a salary of $12,000 per annum. I have requested counsel to examine the minutes of the company to ascertain whether these salaries were fixed by a resolution. He informs me that no resolution on the subject can be found. It therefore does not expressly appear whether these salaries were attached to the office of president and treasurer or whether they

were arbitrary sums awarded to the owners of the business under the name of salary, for the 'purpose of determining complainant's compensation. Being the only stockholders they would have been entitled. to the profits under any name. That the salaries were personal to the owners is fairly to be inferred from the way in which the business was managed. This is what W. E. Bedell says in reference to his brother Alfred's work:

"Q. As a matter of fact, did your brother do considerable work in connection with the Newark store?

"A. Very little.

"Q. Very little work?

"A. Yes, sir.

"Q. Did you do the same amount of work in connection with the Newark store as you did previously?

"A. I did extra work.

"Q. You did his very little extra work. Is that it?

"A. That is right."

The minutes show that when Alfred retired from the business on August 15th, 1912, W. E. Bedell was, by resolution, appointed treasurer in his place, but they do not show that the corporation took any action in reference to his salary. Mr. Bedell said in his evidence that they showed that he was to receive his brother's salary, but it is conceded that he is mistaken.

As the evidence stands, it would seem that the money value of the services rendered did not exceed $1,000 per annum.

There is a conflict between the evidence of Mr. Smith and Mr. Bedell. Mr. Smith says that after Alfred left he did most of the work Alfred had been doing, and that he knew nothing about Mr. W. E. Bedell's intention to keep on charging the $12,000 as an expense until after he left defendant's employ. On the other hand, W. E. Bedell says that complainant's work was not increased, and that he knew, or had the means of knowing, that he (W. E. Bedell) was going to draw his brother's salary. The burden of proof is on the defendant and I do not think it has sustained it.

The question raised by the first exception is whether in computing complainant's share of the net profits $24,000 should be deducted. from the gross earnings or only $12,000.

Smith says that the original agreement (made, as I have said, in 1906) was, "I was to receive a compensation of $55 per week, and in addition ten per cent. of the net profits." The two brothers "were each to draw $12,000 a year salary." Mr. W. E. Bedell's testimony is only, that Alfred was to draw $12,000 per annum as treasurer. He does not state the original agreement otherwise than as Mr. Smith states it. We have then these facts: First, an agreement for a percentage of net profits. Then an understanding, had at the same time, that the two Bedells should receive $12,000 each for their services as president and treasurer. Then, a retirement of A. M. Bedell and an election of W. E. Bedell to the treasurer's office, no salary being fixed. Then, the fact that the value of the service to be performed did not exceed a small fractional part of $12,000; and then the further fact that for the six months period over which the account extends W. E. Bedell drew his brother's salary without any corporate action giving it to him. Under these circumstances, it would seem that even if we concede that the corporation could give the treasurer (as against Mr. Smith's contract right to have net profits) any sum it pleased, in excess of what his services were fairly worth, the action must at least have been that of the corporation and not that of W. E. Bedell, individually, even though he had the controlling interest. Unless it be shown that the original agreement was to deduct $24,000 in any event, then, when Alfred withdrew, his salary stopped. Until the company otherwise ordered, the incoming treasurer could only, as against complainant, be entitled to receive what his services were reasonably worth.

The second exception relates to the inclusion of buyers' salaries in the statement showing net earnings. The Bedells had a business in New York controlled by another corporation. They employed buyers therein who were paid by that corporation, and, up to the last half of complainant's connection with defendant, by that corporation only. These buyers bought also for the Newark store, which had in addition a buyer of its own. Up to the time of the last accounting—that is, for a period of seven years, no part of the New York buyers' salaries had been put into the account. After the complainant resigned, the statement

rendered contained, by direction of W. E. Bedell, a charge of one-quarter of these salaries. The evidence shows that in computing net profits, there were arbitrary assumptions made on both sides of the account; there had been "an established method of accounting for net profits." Mr. W. E. Bedell says that from the time complainant entered defendant's employ until the time he severed his connection with it, there was no change made in regard to any existing arrangement. Now, as the Newark store received a benefit from the services rendered by the employes of the New York store, it would have been quite proper for the defendant company to have agreed to pay the New York concern what their buyers' services were worth. But they had not done so; and I do not think it was competent for Mr. Bedell alone, without corporate action previously taken, to direct his bookkeeper to charge one-quarter of the salaries that had, up to that time, been paid by the New York store.

The third exception is without merit. The defendant, according to the evidence, had requested complainant to do some extra work in their Brooklyn store and had made a payment to him for this work. It was extra compensation for extra work done elsewhere and has no place in this account.